Good morning, Your Honors. May it please the Court, Lauren Tory on behalf of Appellant and I'll watch my time. The prosecution of this case was flawed from the outset. I'd like to focus on three issues in our briefing. First, the statute of limitations waivers and that they're invalid because they are not knowing or voluntary. Second, the district court provided an erroneous offense instruction. And finally, the government's Brady violation in this case impaired the defense strategy. What was the third one? The government's Brady violation, Your Honor. Brady. Okay. Turning first to the statute of limitations in this case, they were invalid here because they were not knowing and voluntary. We know this in this case because the court requires that waivers be entered with the full awareness of the rights that are involved and the consequences of abandoning those rights. So, so, counsel, let me ask you, if we were to find hypothetically that the limitations agreements were clear on their face, the waiver agreements, and clearly in terms of what they say, did what the government claims they did and what the district court and the magistrate judge found they did, what else would the government need to prove if the government proved the language did what they said it did and that your client signed this with the assistance of counsel? And because we're not here dealing with ineffective assistance of counsel claim, what beside the language of the agreement and that your client was represented by counsel and was competent and not generally incompetent, what else would they have to show? What's missing within these waivers, Your Honor, is that he understood the consequences of relinquishing these rights, of signing these waivers. While the language includes the knowing and voluntary express language in the agreement, this court's precedent in United States versus Lowe says when it's analyzing if something is knowing and voluntarily made, the court is looking at the record as a whole. Okay. Let me ask you because I'm having trouble understanding why this language doesn't clearly say what the government says it means. I'll go to what I think is the first one at ER152 where it says that the period between January 15 and May 15 shall be excluded from any calculation of the statute of limitations regarding these specific offenses. I reserve the right to challenge on any other ground. Why doesn't that clearly do what the government says it does? What's ambiguous about that? What doesn't it inform your client? And so, Your Honor, I note that my challenge is that it's knowing and voluntary and ambiguity are separate and distinct argues, but as to ambiguity. Your answer was, I thought, that it didn't clearly tell your client the consequences. And I'm trying to figure out, what is it that it didn't tell him? We have the declaration that Mr. Yuvari provided with his motion, and in that declaration it states that he did not know what the waiver meant, the rights that he was waiving. But you had, I thought my prior question was, what more does the government have to show? And I thought what you said was the language itself doesn't inform your client of the consequences and I'm having trouble with that because I think the language that I read does inform him. So I'm asking you, based on the language of the waiver, what is missing there? The language of the waiver does not explicitly explain when the statute of limitations begins. The consequences involved in relinquishing these rights, which in this case for count one, the government had one month left to indict on count one. Mr. Yuvari was not aware of that. Also we know, based on this record, that it was ambiguous as to how the time was calculated between the first and second waivers. We have the defense, the government, and the district court calculating these dates differently. I mean, I guess I have the same trouble that Judge Bennett was articulating in understanding what the ambiguity is here because it, first of all, the second paragraph of the waiver does say when the statute begins, it says, you know, it runs six years from the date of the last act that constitutes the commission of the offense. And then, so you, whenever that is, you run six years except that you exclude the period between January 15th and May 15th and you don't count that in counting out the six years. What, maybe you could sort of take us through, like, how else you might read that so that it would suggest a different calculation. So the defense read this as the expiration deadline, at least if we set aside any arguments about revival between the first and second waiver, that the end date was August 15th. However, even if we assume that exclude did mean toll in this case, the problem with this waiver is that, first, it's not specific enough as to the conduct. The waiver mentions the statute itself and it's six years from the date of the last act. The problem is, is that it's unclear as to when the last act begins, which returns the government is including within this waiver and investigating for the purposes of indictment. Additionally, it's missing that he understood the consequences, Your Honor, and I think that's a more directed answer to your initial question about even if the consequences, even if Your Honor believes that the consequences are adequately explained, there isn't any information here that he understood those consequences. I mean, and what is it that, I mean, are you, is there a dispute that he understood that when the statute of limitations runs out, he can't be prosecuted for it? And if it hasn't run out or if it's waived, he can. I mean, did he not understand that? I would point, Your Honor, to Mr. Uvari's declaration in which he states that he was never informed what the waiver meant and the rights that he was waiving. So counsel, you know, I'm having trouble seeing why we should get to Mr. Uvari's declaration or what I would consider the parole. But if I were going to get to the parole, what I would get to would be ER 139, which is, which starts with an email from, I believe, Mr. Uvari, where he says to his lawyer, so I am confused as to where the negotiating is. They sent an offer two months into the tolling agreement. This is vis-a-vis the second waiver. So this is Mr. Uvari using the term tolling agreement, which suggests, if I were going to get to the parole, that he knew exactly what was happening. And he's not happy because he thought he was going to walk scot-free and not get indicted at all. And his lawyers aren't doing a good job. But where does that suggest, when he uses the word tolling agreement, that he didn't understand precisely what was going on? Here in this case, Your Honor, we can't be sure that he understood what the term tolling meant based on this email. But I would, again, point the court to United States v. Lowe, where this court's precedent says, aside from the parole evidence, is that this court looks at the whole record when reviewing waivers and whether they're knowing involuntary. So the district court below, at a minimum, should have granted an evidentiary hearing to dive into the information that was provided in the declaration. And then the government would have had an opportunity to meet its burden to show that these waivers were knowing involuntary and that they were valid. For these reasons, Your Honor, we'd request first that the court vacate on counts one or two, or in the alternative, send this back for a hearing in the first instance. Turning next, Your Honors, to the erroneous jury instruction, unless Your Honors have any other questions about the statute of limitations waivers. The jury instruction on the offense elements in this case was erroneous for two reasons. First, it was, well, and in the alternative, either it was a constructive amendment of the statute 26 U.S.C. 7206, subsection one, and it was adding in conduct that included subsection two of that statute. Or if we look at this from the perspective of an implied theory of aiding and abetting, it was an inaccurate statement of law. You agree, though, that the government does not have to elect in the indictment vis-a-vis aiding and abetting, right? That that's automatically included, and whether there's anything about aiding and abetting in the indictment or not, the government can always ask the trial judge to instruct on aiding and abetting. That's correct, Your Honor. But here, turning directly to aiding and abetting, if we are assuming that it's applied in this case, and we do concede that it can do that, the language that was added to this completed offense instruction was that it could have been, Mr. Uvari could have caused or authorized another person to sign and file the return. The problem with this is that in blending two distinct theories of liability, aiding and abetting and the completed offense, the court failed to include the mens rea attached to that aiding and abetting liability. And what I'm talking about specifically is that he knew the return that was being signed and filed had false information as to a material matter. When we look at the model— And why is that? I mean, so aiding and abetting is described in 18 U.S.C. 2a, but 2b, which seems maybe more directly relevant here, describes whoever willfully causes an act to be done, which if directly performed by him or another would be an offense against the United States, is also punishable as a principle. And if we think of it as proceeding on that theory, if he caused the filing of the return, then the mens rea that's required is just willfulness, and the jury was instructed that it had to find that he acted willfully. So why would that not be adequate? It's inadequate because it lacks information of knowledge of false information as to a material matter. So willful action is, I think, a separate matter when we're talking about whether or not he intended that the crime be completed. Him causing another person to sign and file the return is not an offense under the statute. He has to know that it has false information in the return, because this is a tax perjury statute. Was the jury given a definition of willfulness? Yes, it was, Your Honor. However, it did not encompass this particular knowledge that I'm describing. When we look at the model instructions, the model intended that aiding and abetting and this completed offense be provided as separate instructions. Here, in mixing the two, it's possible that the jury could have reached a verdict without finding that necessary knowledge that I'm describing as to the false information in the return, because the district court adds on this aiding and abetting language to the very end of the instructions without properly connecting it to that mens rea. For these reasons, we've asked that this court reverse, because this was the only instruction that was provided as to any of the elements for counts one through four. Turning finally to the Brady violation that we raised in our briefing. In this case, the government failed to provide and disclose information that was favorable and material to Mr. Yuvari. The evidence that we're describing is that they failed to reduce the IRS's system populated and generated W2G forms. This relates to count one. Count one encompassed multiple W2G forms. And in failing to provide this information mid-trial, and I would also note for this court that we are under a different materiality review when we look at United States v. Cloud, because this was a mid-trial violation that was found. So this court isn't looking at this from the perspective of whether this violation was outcome determinative. It's not a retrospective test. I have trouble understanding how the information you said you didn't learn until mid-trial is exculpatory. So it has to be exculpatory, right? Or impeaching, Your Honor. Okay, so how is it either? In this case, it's exculpatory because it went to their good faith reliance defense. They could have argued that it was either faulty entry by the accountant or that there was a glitch in the IRS software when what they call printing the form. But wasn't your client's entire defense that was presented to the jury that he had no idea that there was any false information in the return at all? Yes, Your Honor. However, the test isn't whether it would change the theory that the defense was pursuing. The test is whether it would bolster the defense, whether it was favorable, and in this case it was extremely valuable. Because here we had witnesses that testified that the forms, the W2G forms were fake or that the forms were forged. And the government in opening stated that Mr. Yuvari sent in fake documents that were supposed to be from these companies that withheld the money. Again, in opening statement, the government states that Mr. Yuvari had fake W2Gs attached that were supposed to be from these companies. But all of those documents were fake. At all of these instances, the defense could have relied on this information to explain that Mr. Yuvari wasn't the individual inputting this data in the W2G forms. He wasn't forging information, that the accountant was entering this information. I thought it was part of his defense that it was the accountant. Yes, Your Honor, but this would have bolstered that because they didn't have the information as to how the W2G forms came to be a part of the return. Whether it's a piece of paper he's handing to the account that gets attached, that's what was believed. Essentially, as if you were paper clipping or stapling it to the return itself. But now, with this information, the defense now has knowledge that it's inputted by the  That is extremely valuable to that defense that it is in good faith reliance on this accountant to file this return properly. Finally, Your Honors, because we are under this distinct test about whether or not this evidence is of value, and it clearly went directly to cross-examination questions that could have been made, a different opening statement that could have been made, and even pretrial decisions to call an expert on IRS software, we meet the burden under United   For these reasons, we ask the court to dismiss count one, or that a mistrial should have been granted by the district court. I'd like to reserve the remainder of my time. Yes. Thank you, counsel. All right. We'll hear from the government. Good morning. May it please the court. Peter Walkingshaw on behalf of the United States. Unless the court has immediate questions, I'd like to take the issues that appellant raised in opening argument in reverse order, starting with the alleged Brady violation. And now, I think there are two really separate issues within that that need to be untangled. The first is, it is undisputed that the defendant bears the burden of establishing materiality for a Brady violation, and it's clear that when given the opportunity to do so, in this case, through post-trial motions, district court denied this motion without prejudice and gave the defense an opportunity to return with any purported expert that could have suggested that there were systematic errors or glitches in the IRS system, as it were alleged. No subsequent factual development of this issue was made at all at any point. And that's because there's simply nothing to it. When the district court made the determination that there wasn't enough before it to provide any relief to the defendant based on the disclosure of this information, it was correct at that time, and nothing changed in the ensuing period. Now, with respect to the legal standard, I think we have a little bit of a disagreement as to the effect of Cloud and Bundy's commentary on this case. To borrow a phrase from those cases, it's a bit of an awkward fit here, where in Bundy and Cloud, those cases involve this court's review after relief had been granted to a defendant mid-trial. And so the trial didn't proceed as it would have, you know, in the absence of the purportedly exculpatory evidence. But they say that Cloud and Bundy say it's awkward for this court to review in sort of a hypothetical retrospective as to what would have happened if the jury had proceeded to a verdict, you know, with things as they are absent the disclosure when it happened. Well, in this case, the case did proceed to a jury verdict, to a conclusion, to a conviction. And so in that respect, it's not really any different from the ordinary case in which this court assesses Brady violations. But the government would submit that this isn't really the case to refine the standard. The only plausible manner in which this information could have helped the defense is if there were, in fact, some evidence to suggest that computer errors could have generated the fraud that he perpetrated in this case. And under any standard, that's just, there's no evidence to support this. I believe on examination of the witnesses regarding the WGGs, they noted things like incorrect mailing addresses, things like, you know, avenue instead of street for the addresses for the betting companies. And I think it's also worth noting, as we relied heavily in our brief, Mr. Uvari sent the IRS a more than half a million dollar refund, and I would like it. So there's really no question this was some sort of technical glitch or error. You're talking about the August 29, 2017 letter? That's correct, Your Honor. So there's really no question as to this being some sort of mix-up or technical glitch. This was part of a clearly proven intentional fraud on the part of Mr. Uvari, which carried on for years. And unless there are any questions on the Brady issue, I think at this point I'll move on to the jury instruction portion. I believe Judge Miller correctly noted the jury was given a willfulness instruction, both in the sense that it was given a definition of what willfulness was. I believe that can be found at 2ER280 in the record, and it let the jury know that he needed to he intentionally and voluntarily violated that duty. And the language of the jury instruction that was given clearly tracks the text of 18 U.S.C. section 2, subsection B. Now, while appellant asked for a instruction that mirrors subsection A's aiding and abetting theory of liability, that wasn't the theory that the government pursued at trial. And giving the jury that construction would have only served to confuse it. So we would submit that the jury instruction that the defendant effectively demands before this court would have been inappropriate given the evidence that was used at trial. Your friend on the other side suggested that the willfulness instruction didn't necessarily capture the requirement of his knowledge of the falsity of the return. Can you address that? Your Honor, again, the willfulness was defined under the willfulness instruction as saying that he knew that federal tax law is basically the highest level of culpability. He had to know that he was intentionally and voluntarily violating the law. And in this case, the only way that that could have been done was by through submitting false information. It is also true that in the elements of the offense, the first element was Mr. Obari signed and filed the tax return that he knew contained false information as to a material matter. Although that language is not put back in the sentence beginning the government can establish that Mr. Obari signed and filed, right? That's correct, Your Honor. But it does say that effectively if you break the first element instruction up into sort of two separate elements, first that he signed and filed, and then lower down it gives sort of a definition of what that can mean. But the element still contains the instruction that he knew contained false information as to a material matter. So the government's argument with regard to this point is that reading the instructions in context, including the willfulness instruction, that no one could reasonably read the sentence beginning on line 26 of ER 24 as not including that state of mind. That's correct, Your Honor. It's really effectively the sentence that begins on line 26 is effectively a definition in some sense for what signing and filing can mean in this context. So I should know this and I apologize for not, but in the objections that the defendant advanced, did they advance an objection asking that willfulness, the word willfulness or something like it be inserted into the instruction beginning on line 26 of ER 24? Not that I recall, Your Honor. I believe the objection was just to the inclusion of the language at all. That's my memory, though. I apologize. I don't recall the exact contents of the colloquy. But I do believe, Your Honor, is correct that that was not specifically adverted to. I don't wish to interrupt if the court has. Hold on one second. Hold on the time. I was asking that your two microphones be hooked up to my speaker here. Okay. Why don't we stop your clock running and why don't we take a just stay there for the minute. We'll see if we can get our system back up. I can't hear them. I can hear him, but I can't hear them. I do have to note, Judge Beyer, I've seldom been criticized for speaking too softly. When you're speaking away from me, that's what I don't get. You can't hook up their two microphones to this? I believe it is already coming through, Judge. It's not coming through. I'm telling you. I will call. Yeah. Judge Beyer, does this . . . Now I can hear you. Okay. Should we start again from over here? Can you hear Judge Miller? Can you hear me here? All right. Well, Judge Miller and I will try to speak up too and if you can't hear us, please let us know, Judge Beyer. All right. We can start again. Okay. Thank you, Your Honor. Yes. So, I apologize. I believe I answered Your Honor's question.  If I didn't, I apologize. You did. And I would just follow up with the effect that, you know, while the government . . . There is no instructional error here, but if any error alleged, it's clearly harmless in view of the defendant's subsequent adoption, ratification. His motivation, he was the only beneficiary of this fraud scheme. It was fairly egregious in that it claimed refunds based on tax payments made by companies that had no business with him and had never listed him as a customer, and that he was the sole beneficiary of the fraud. So, while we don't . . . While there is no error here, even the error allege is clearly harmless. And unless there are any further questions, I would move on to the statute of limitations defense. I think it's fairly clear that the text of the waiver is unambiguous as both the magistrate and the district court found. I think really the only rub at this point is whether or not the sort of conclusory statements in Mr. Yuvari's affidavit, if we get there, would be enough to warn an evidentiary hearing. And they simply were not. And what is your understanding of what we look at in assessing whether it's knowing and voluntary? So, if it is clear and unambiguous on its face, do we stop there or do we look at other surrounding circumstances? So, I think there are surrounding circumstances that could merit a hearing, I think, you know, in cases where perhaps a defendant didn't speak the language and therefore there's reason to believe that they didn't understand the clear and unambiguous text. You know, perhaps if the defendant was under the influence of some sort of, you know, intoxicating drug, something that actually . . . If there was circumstances that would lead the court to believe or explain non-comprehension of simple unambiguous text, then perhaps looking past the waiver might be warranted. But this Court's precedents make it clear that to get to an evidentiary hearing, a defendant needs to provide or a movement needs to provide definite, specific, and detailed allegations in their moving papers that would warrant a district court to believe that there really is an issue of fact. And what Mr. Yuvari did in his affidavit, he said, well, I didn't know what it meant, but he doesn't give any explanation as to the source of his confusion or what his confusion actually encompassed. He says he wouldn't have signed it if he had known the consequences, but he doesn't say which consequences would have stopped him from signing the waiver. And, in fact, he got what he bargained for. Well, ultimately what Mr. Yuvari wanted out of this process was a non-indictment that was not promised by the waivers, and even he doesn't argue that it was. He got the delay that he wanted. He got an opportunity for his lawyers to pursue, to advocate to the government that indictment in this case was not warranted. But the consequence of not signing the waiver would have been an immediate indictment, which is something that he very clearly did not want. And so when the allegations here are wholly conclusory, they basically are just the final fact that the defendant would like this court to adopt. But if there's no basis to support the eventual conclusion that would be necessary to afford him any kind of relief, a hearing would have simply been a waste of time in that it's not clear what he would have done aside from get up on the stand and say, I didn't know what this was, and I would not have signed, were it not for the consequences. But it's clear that he had a month to consider each of these waivers, roughly, before signing them, that he discussed them with his attorneys, that he speaks the language in which they were written, and that they are written in simple and unambiguous language. Therefore, a hearing just simply, it's clear that these waivers are unambiguous, and nothing in Mr. Yuvar's affidavit warranted having a hearing. There's one matter I wanted to turn to very briefly. I think that, I believe in the reply brief, there's something of an increased focus on Mr. Yuvar's knowledge of the penalties, the tax returns require an attestation that the statements are made under penalty of perjury, particularly with the sufficiency argument, but to a degree at the argument before the bar with respect to the jury instruction as well. I'd just like to note that in the opening brief, we certainly took the sufficiency argument to go entirely to whether or not the signature, the electronic signature, could be valid. To the extent that there is any doubt that there is an issue here, I would just note that included in the government's exhibits were personal tax returns for Mr. Yuvar from the tax years 2007, 2008, and 2009, in which he hand-signed them in ink, right below a line attesting to the fact that the penalties are made under penalty of perjury. These were admitted as exhibits of trial, were presented to the jury. They were discussed before the jury at record pages 551 to 553, and they were discussed before the district court in terms of pre-admittance, in terms of their content and the fact that they contain this attestation at pages 488 and 490. Now, while I think this is very clearly established in the record, I want to, in an abundance of caution, offer to the court, if the court would like to see these documents, we're happy to file them as a supplement to the record. I apologize for not having done so earlier. We just didn't interpret that to be what the defense was arguing in the opening brief. But if the court doesn't see it as necessary, then we're certainly happy to rely on the record citations in the record. But it's clear that that evidence is in there. And in the absence of any questions, I'd be happy to submit and request that this court affirm Mr. Yuvar's sentence and convictions in full. All right. Thank you, counsel. Thank you. And appellant has some significant time left for rebuttal. Thank you, honors. A few points on rebuttal. First, as to the government's arguments for the Brady violation, we submit that Cloud does refine the standard when it comes to mid-trial Brady violations that are discovered. It's very clear that when there is this mid-trial discovery, whether the evidence is favorable to the defense is the test. And whether the evidence either helps to bolster the defense's case or impeach the prosecutor's witnesses, we submit that this evidence did both in this case. Turning next to the erroneous jury instruction. Here, the language that was added to encompass an aiding and abetting theory of liability was insufficient because willfully signing and filing a return does not encompass all the elements of this statute. This is the tax perjury statute. This individual needs to understand and know that the information that's being filed is false information. Because it wasn't properly included when the district court blended these two distinctive theories in this instruction, it is erroneous. Additionally, as to this issue, because this is a constitutional error, given that the jury did not have an opportunity to find each element of the crime beyond a reasonable doubt, there has to be error that is harmless beyond a reasonable doubt. That can't be met with this instruction because a reasonable jury could have reached a verdict without finding that knowledge under an aiding and abetting theory, given the way this instruction is written. And lastly, turning to sufficiency. Our argument is twofold, that the T-PIN is not a valid signature. But even if we take the government's position and we assume that a T-PIN is a proper signature, the problem in this case is that there is no evidence that Mr. Yuvari knew it was being filed under the penalties of perjury, that he saw that language that was on the return because it was e-filed by his accountant, and we don't have a jurat in this case, which is that form that the IRS requires be signed every time a return is filed by an e-filer when there is an accountant involved. This would be a different case. You know, on that point, isn't the August 29, 2017 letter from Mr. Yuvari where he says, I e-filed the original form 1040 for 2011, doesn't that go to that point? We submit that that's insufficient evidence because there's nothing in that letter that explains that he knew it was entered under the penalties of perjury, and we know that this was filed. Would you look at the evidence in a circumstance like this in the light most favorable to the United States with all inferences in their favor? Yes, Your Honor, that's correct. And doesn't I e-filed, taking into account the inferences in their favor, be that when he e-filed, he knew what he was e-filing? Well, the evidence is contrary to that when you look at the return itself because there is what's called an ERO, and I might be mixing up those letters, PIN, which means that this was filed by his accountant. So when he's saying that I e-filed my return, it is his return, but it was prepared by an accountant and filed by his accountant through the IRS's software. And so here, there's no mentions of penalties of perjury in that letter. We can't be sure that he saw it because it was filed by his accountant, and therefore count one should be vacated because there's insufficient evidence. Thank you, Your Honors. All right. We thank counsel for their arguments, and the case just argued is submitted.
judges: BEA, BENNETT, MILLER